## Hillegass et al. v. Levy

*Irwin S. Rubin,* for plaintiffs.

*Wisler, Pearlstein, Talone & Gerber,* for defendant.

KNIGHT, P. J., March 8, 1955.—We have before us preliminary objections to a complaint which sets forth the following facts. In February 1954 one Elsa Wolff, a citizen of Great Britain residing in Glasgow, Scotland, desired to visit the United States. Before she could obtain a visa she was required to obtain the following certificate:

"To whom it may concern:

"This is to inform you that I herewith invite my first cousin, Elsa Wolff, 57 Marywood Square, Glasgow SI, Scotland to come to Lansdale, Pa. U. S. A. as a visitor. During her entire stay in the U. S. A. she will be my personal guest at my home in Lansdale, Pa.

"I take it upon my responsibility and state that I am willing and able to support her during her stay.

(s) Paul Levy

"Affirmed and subscribed to
and before me this 4th day
of February, 1954
    (s)   Edwin P. Gotwals
           Notary Public
           Lansdale, Pa.
  "Commission expires Jan. 7, 1957"

Elsa Wolff came to the United States and from April 20, 1954, to May 4, 1954, she was the personal guest of defendant, Paul Levy, in his home in Lansdale. On May 4th defendant and his wife required Elsa Wolff to leave their home in Lansdale without making any arrangements for her maintenance and support. Through new found friends arrangements were made for Elsa Wolff to stay at the home of plaintiffs, Marvin and Marion Hillegass, where she remained until June 23, 1954, when she returned to Scotland. When making the arrangements with the Hillegasses a copy of the certificate or affidavit set forth above was exhibited to them and relying thereon, the Hillegasses took Elsa Wolff into their home.

This action is brought to recover the reasonable value of room and board for Elsa Wolff while a guest in the Hillegasses' home.

It is rather difficult to see on what theory plaintiffs seek to impose liability on defendant. No express contract is alleged; it is not averred that defendant took Elsa Wolff to the Hillegass home or agreed to pay for her maintenance there, but on the contrary it is averred that the arrangements were made by "new found friends". Nor, can we see any implied contract in the situation. To recover under the theory of an implied contract, facts must be averred from which such a contract may be inferred. If defendant had taken Elsa Wolff to the Hillegass home and requested the Hillegasses to keep her or had he left her there without any instructions, an implied promise might arise that he

intended to pay for her room and board while there. No such facts are averred; it is not even averred that defendant knew that Elsa Wolff was at the Hillegasses or that she went there with the consent of defendant. The only other theory on which plaintiffs could assert the liability of defendant is as a third-party beneficiary based on his undertaking as set forth in the affidavit, supra. What was the nature of this undertaking? It seems to us that it was required under the regulations of the United States in order to insure that a visitor to this country would not become a public charge and it is not averred that Elsa Wolff was a public charge. It was a representation that Elsa Wolff would be the guest of defendant in his home during her entire stay in this country. If defendant violated his promise and agreement and required Elsa Wolff to leave his home, she should have returned immediately to Scotland or complained to the immigration authorities. The Hillegasses are to be commended in befriending a stranger in a strange land, but they acted as volunteers, and as volunteers they cannot look to this defendant for payment. We view the undertaking of defendant in the nature of a bond in which the United States Government is the obligee and the Hillegasses do not qualify either as third-party donees or as third-party creditors. As for Elsa Wolff herself, there was no consideration for the promise of defendant moving from her to defendant.

There was no time mentioned as to the length of the visit of Elsa Wolff to the home of defendant, and it could have been terminated by either party at any time. As we see it, when defendant terminated the visit, his responsibility for the support of Elsa Wolff ended.

And now, March 8, 1955, the preliminary objections are sustained and it is ordered and directed that judgment be entered for defendant.